# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TAMMY SAUNDERS,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | **Case No.:** |
| : | |
| : | |
| **OPTUM, INC.,** : | |
| : | **COMPLAINT IN CIVIL ACTION** |
| **Defendant.** : | |
| : | |

Filed on Behalf of Plaintiff:
Tammy Saunders

Counsel of Record for this Party:
**THE LAW FIRM OF FENTERS WARD**

Joshua P. Ward
Pa. I.D. No. 320347

The Law Firm of Fenters Ward
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Telephone:   (412) 545-3015
Fax No.:     (412) 540-3399
E-mail:      jward@fentersward.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TAMMY SAUNDERS,** | : |
| **Plaintiff,** | : |
| v. | : Case No.: |
| **OPTUM, INC.,** | : |
| **Defendant.** | : **COMPLAINT IN CIVIL ACTION** |

AND NOW, comes Plaintiff, Tammy Saunders, by and through the undersigned counsel, The Law Firm of Fenters Ward and, specifically, Joshua P. Ward, Esquire, who files the within Complaint against Defendant Optum, Inc., of which the following is a statement:

## **PARTIES**

1. Plaintiff, Tammy Saunders (hereinafter "Ms. Saunders" or "Plaintiff"), is an adult individual who currently resides at 317 West 6th Street, Waynesboro, Pennsylvania 17268.

2. Defendant, Optum, Inc. (hereinafter "Optum" or "Defendant"), is a corporation with its headquarters located at 11000 Optum Circle, Eden Prairie, Minnesota 55344.

## **NATURE OF THE ACTION**

3. This action arises under the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12112(a), *et seq.*, the Pennsylvania Human Relations Act 43 P.S. §§ 951, *et seq.* ("PHRA") and the Medical Marijuana Act 35 P.S. § 10231.2103(b), *et seq.* ("MMA"). Plaintiff avers that she was subjected to discrimination on the basis of her disability and status as a medical marijuana patient which resulted in refusal to hire.

1

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's ADA claim pursuant to 28 U.S.C. § 1331.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. Plaintiff is a resident and citizen of Pennsylvania, a substantial amount of the events or omissions giving rise to the claims occurred in Franklin County, Pennsylvania, and therefore, this action is within the jurisdiction of the United States District Court for the Middle District of Pennsylvania and the venue is proper pursuant to 25 U.S.C. § 1391(b).

7. Plaintiff filed a timely charge with the Equal Employment Opportunity ("EEO") regarding her allegations on or about January 8, 2020 under case number 444-2019-01822.

## PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

8. On or about July of 2019, Ms. Saunders applied for employment with Optum through the use of a recruiting service, The CSI Companies, Inc. (hereinafter "CSI").

9. Ms. Saunders' job duties were to involve Hierarchical Condition Category[1] ("HCC") coding within Defendant's medical billing department.

10. Ms. Saunders was qualified for this position as she had over ten years of relevant in-patient and out-patient medical record coding experience, prerequisites for employment with Defendant.

---

[1] *Understanding Hierarchical Condition Categories (HCC)*, pg. 4; "The Centers for Medicare and Medicaid Services (CMS) introduced the Hierarchical Condition Category (HCC) in 2003. HCC is a set of codes that CMS uses to determine reimbursements to Medicare Advantage plans. The HCC codes are designed to accurately reflect patient "acuity" – or the severity of illnesses facing a plan's members. A Medicare member's health status in a given year is used to predict costs in the following year. The correct use of HCC codes can result in increased payments. Using them incorrectly can result in penalties." http://www.formativhealth.com/wp-content/uploads/2018/06/HCC-White-Paper.pdf. Formativ Health, 2018.

11. As part of Defendant's on-boarding process, Ms. Saunders responded to a qualification questionnaire which asked both personal and professional questions.

12. At that time, Ms. Saunders disclosed her relevant professional experience in addition to the disabilities from which she suffers: Post Traumatic Stress Disorder ("PTSD"), neuropathy, anxiety and depression.

13. The final step of Defendant's pre-employment process required Ms. Saunders to undergo a drug screening.

14. Ms. Saunders disclosed that she had been prescribed medical marijuana in order to manage her disabilities, and that such results would be indicated on the drug screening.

15. Ms. Saunders was advised to take the test and later provide proof of her medical marijuana cardholder status.

16. Thus, Defendant had notice of Ms. Saunders' disabilities and status as a medical marijuana patient.

17. Ms. Saunders communicated with Defendant through CSI employee, Alesia Halliday (hereinafter "Ms. Halliday"), for receipt of computer equipment to begin remote work.

18. Thereafter, Defendant delivered the equipment to Ms. Saunders' home.

19. Defendant represented to Plaintiff that she would begin work on or about August 26, 2019.

20. On or about August 23, 2019, Ms. Halliday emailed Ms. Saunders and stated that, "[CSI] just received feedback from the Optum managers… they said with the failed drug test they cannot move forward with the position at this time."

21. Ms. Halliday's email added, "they cannot accept a failed drug test regardless of the card."

22. Therefore, Defendant refused to hire Ms. Saunders.

23. The clear discrimination of Ms. Saunders on the basis of her disability and status as a medical marijuana patient indicates a willful and deliberate violation of the ADA, PHRA and MMA.

## COUNT I
## DISCRIMINATION IN VIOLATION OF
## THE ADA

24. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

25. The inquiry into whether a person is disabled under the ADA is made on a case-by case analysis. *Tice v. Centre Area Transport Authority*, 247 F.3d 506 (3rd Cir. 2001). To establish a prima facie case of discrimination under the ADA, Plaintiff must show: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of his job, with or without reasonable accommodations by the employer; and (3) he suffered an otherwise adverse employment decision as a result of discrimination. See *McGlone v. Philadelphia Gas Works*, 2018 WL 2193658, at *2 (3d Cir. 2018) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)

26. Plaintiff is disabled within the meaning of the ADA.

27. Plaintiff suffers from Post-Traumatic Stress Disorder ("PTSD"), a mental health condition that can cause changes in thinking and mood, severe anxiety, depression, flashbacks, uncontrollable thoughts and changes in physical and emotional reactions which substantially limits Ms. Saunders' major life activities.

28. Plaintiff also suffers from neuropathy, which is caused by damage or dysfunction of one or more peripheral nerves, typically resulting in numbness, tingling, muscle weakness and pain in the affected areas which substantially limits Ms. Saunders' major life activities.

29. In order to manage her disabilities, Plaintiff was prescribed medication.

30. Plaintiff is a highly qualified individual who is competent to successfully complete the necessary functions of her job.

31. This is evidenced by Plaintiff's experience, Defendant's positive response to Plaintiff's application, commencement of pre-employment screening, satisfactory completion of a pre-employment examination and shipment of equipment to Plaintiff for remote work.

32. There is no evidence to suggest Plaintiff lacked any qualifications necessary to perform the functions of her job.

33. Defendant represented to Plaintiff that she would start employment on or about August 26, 2019.

34. Plaintiff previously made the relevant supervisors at Optum aware of her disability.

35. Plaintiff subsequently suffered an adverse employment decision in the form of refusal to hire.

36. This discrimination was specifically related to Plaintiff's disability.

37. As a direct and proximate cause of the aforementioned conduct, Plaintiff suffered actual damages, including, but not limited to, lost wages and benefits, emotional distress, anxiety and inconvenience damages, all in the past, present and future.

38. As set forth hereinabove, the Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Plaintiff requests this Court award her back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, and reasonable attorney's fees.

## COUNT II
## DISCRIMINATION IN VIOLATION OF
## THE PHRA

39. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

40. Section 955(a) of the PHRA states, in pertinent part:

"It shall be an unlawful discriminatory practice ... [f]or any employer *because of*... *disability*... of any individual... *to refuse to hire or employ or contract with* ... such individual… or to otherwise discriminate against such individual…"

43 P.S. § 955(a) (emphasis added).

41. The PHRA is modeled similarly to the ADA and shares similar burdens. The analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds. *Bialko v. Quaker Oats Co.*, 434 F. App'x. 139, 142 (3rd Cir. 2011) (citing *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) (noting that the PHRA, in all "relevant respects," was "basically the same as the ADA" and was interpreted "in accord" with the ADA and related case law, thus meaning that "disposition of [plaintiff's] ADA claim applie[d] with equal force to his PHRA claim."

42. Plaintiff is disabled within the meaning of the PHRA.

43. Plaintiff suffers from Post-Traumatic Stress Disorder ("PTSD"), a mental health condition that can cause changes in thinking and mood, severe anxiety, flashbacks, uncontrollable thoughts and changes in physical and emotional reactions which substantially limits Plaintiff's major life activities.

44. Plaintiff also suffers from neuropathy, which is caused by damage or dysfunction of one or more peripheral nerves, typically resulting in numbness, tingling, muscle weakness and pain in the affected areas which substantially limits Ms. Saunders' major life activities.

45. In order to manage her disabilities, Plaintiff was prescribed medicinal marijuana.

46. Plaintiff is a highly qualified individual who is competent to successfully complete the necessary functions of her job.

47. This is evidenced by Plaintiff's experience, Defendant's positive response to Plaintiff's application, commencement of pre-employment screening and shipment of equipment to Plaintiff for remote work.

48. There is no evidence to suggest Plaintiff lacked any qualifications necessary to perform the functions of her job.

49. Defendant represented to Plaintiff that she would start employment on or about August 26, 2019.

50. Plaintiff previously made the relevant supervisors at Optum aware of her disability.

51. Plaintiff subsequently suffered an adverse employment decision in the form of refusal to hire.

52. This discrimination was specifically related to Plaintiff's disability.

53. As a direct and proximate cause of the aforementioned conduct, Plaintiff suffered actual damages, including, but not limited to, lost wages and benefits, emotional distress, anxiety and inconvenience damages, all in the past, present and future.

54. As set forth hereinabove, the Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Plaintiff requests this Court award her back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, and reasonable attorney's fees.

## COUNT III
## DISCRIMINATION IN VIOLATION OF
## THE MMA

55. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

56. Section 10231.2103(b) of the MMA states, in pertinent part: "No employer may…refuse to hire…solely on the basis of such employee's status as an individual who is certified to use medical marijuana." 35 P.S. § 10231.2103(b)(1).

57. Various state and federal courts have interpreted that MMA to provide a private right of action against an employer. *Hudnell v. Thomas Jefferson U. Hosps., Inc.*, 2020 WL 5749924, at *4 (E.D. Pa. 2020); see also, *Palmiter v. Commonwealth Health Sys., Inc.*, 2019 WL 6248350, at *13 (Pa. Com. Pl. Lackawanna Cnty. 2019); *Chance v. Kraft Heinz Food Co.*, 018 WL 6655670 (Del. Super. Ct. 2018); *Whitmire v. Wal-Mart Stores, Inc.*, 359 F. Supp. 3d 761 (D. Ariz. 2019).

58. Defendant represented to Plaintiff that she would start employment on or about August 26, 2019.

59. Plaintiff disclosed her disabilities and medical marijuana patient status to Defendant.

60. Defendant shipped computer equipment to Plaintiff's home in order for her to begin remote work.

61. On or about August 2019, Plaintiff tested positive for marijuana metabolites during a pre-employment drug screening.

62. Plaintiff provided Defendant with her medical marijuana certification documents.

63. Defendant informed Plaintiff via email that, "they cannot move forward with the position at this time."

64. Thereafter, Defendant refused to hire Plaintiff.

65. As a direct and proximate cause of the aforementioned conduct, Plaintiff suffered actual damages, including, but not limited to, lost wages and benefits, emotional distress, anxiety and inconvenience damages, all in the past, present and future.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Plaintiff requests this Court award her back pay, front pay, any other compensatory damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, and reasonable attorney's fees.

Respectfully submitted,

**THE LAW FIRM OF FENTERS WARD**

Date: November 9, 2020      By: _____
Joshua P. Ward (Pa. I.D. No. 320347)
Kyle H. Steenland (Pa. I.D. No. 327786)

The Law Firm of Fenters Ward
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Counsel for Plaintiff

9